[No. 4968.]

WEIR INVESTMENT COMPANY ET AL. v. SCATTERGOOD.

**Contracts—Specific Performance—Rescission.**

Where a vendee, under a contract which allows him a return of the part payments made in case the vendor's title is not good, rejects the title offered, he cannot thereafter, when sued to quiet title against the contract, claim the right to specific performance by tendering the balance of the purchase price.—P. 58.

*Error to the District Court of the City and County of Denver.*
*Hon. Booth M. Malone, Judge.*

Action by Thomas Scattergood against The Weir Investment Company and A. M. Ghost. From a judgment for plaintiff, defendants bring error.
                                        *Affirmed.*

Messrs. KINGSLEY & McKNIGHT, for plaintiffs in error.

Messrs. BENEDICT & PHELPS, for defendant in error.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Statutory action to quiet title. The complaint was in the form approved by this court:

Plaintiffs in error, defendants below, answered, alleging that defendant in error sold, and plaintiffs in error purchased, the property in question under and by virtue of the following contract:

"Denver, Colo., November 24, 1902.

"Received of The Weir Investment Company $100.00 as part payment of lots five, six, seven and eight, block two hundred and forty-four, in the eastern division of the city of Denver, Arapahoe county, Colorado. The full purchase price of these lots is $40,000.00, and the said Weir Investment Company agrees to pay $400 additional on December 10th, 1902, and $39,500 on or before March 1st, 1903, upon the delivery of a good and sufficient warranty deed to Weir Investment Company, or assigns, and abstract of title showing the property to be free and clear of all liens and encumbrances, except the taxes of 1903.

"It is especially agreed and understood that in the event that the additional $400 is not paid on or before December 10th, 1902, the above $100 is to be forfeited as liquidated damages. It is also especially agreed and understood that in the event that the additional $400 is paid on December 10th, 1902, and the balance of $39,500 is not paid by March 1st, 1903, then the total amount paid, namely, $500, is to be forfeited as liquidated damages.

"In the event that the title is not approved by the attorneys for The Weir Investment Company, then the amount paid by them shall be returned upon the surrender of this receipt, and this contract to be null and void.

(Signed)                    "FERRIS & CONAWAY,

"Agents for Thomas Scattergood."

Payment of the $100.00 and $400.00, as required by the terms of the contract; failure of defendant in error to furnish abstract of title and deliver deed as required by the terms of contract; assignment of one-half interest in the contract to plaintiff in error Ghost; willingness of plaintiffs in error to comply with the terms of the contract on their part; and offer to bring into court the balance of the purchase price, $39,500.00, to be paid defendant in error upon his compliance with the terms of the contract, is alleged.

For a further defense and as a counter-claim, plaintiffs in error set forth that the property was worth $65,000.00, and that by reason of defendant in error's failure to comply with the terms of the contract, plaintiffs in error were damaged in the sum of $25,000.00.

They prayed, first, for specific performance of the contract; and, second, that in the event the court should adjudge that they were not entitled to a specific performance, that then they have judgment for $25,000.00 damages.

The reply admitted the execution of the contract and the payments alleged, and in effect put in issue all the other allegations of the defense and counterclaim.

A trial to the court without a jury resulted in the following findings:

"(1st) That the plaintiff is lawfully in and entitled to the possession of the premises in question; (2nd) That the plaintiff has title, both legal and equitable, sufficient to maintain this action; (3rd) That the plaintiff and defendants made and entered into the contract in evidence in this case; (4th) That the defendants made two payments upon said contract, one of one hundred dollars and one of four hundred dollars, making a total of five hun-

dred dollars, on account of the purchase price of said property, under said contract; (5th) That the plaintiff or his representatives, some time about or in the month of November, A. D. 1902, delivered an abstract to the defendants; (6th) That defendants' counsel, Mr. Richard McKnight, objected to the title and refused to pass said title and demanded a different and better title than that possessed by the plaintiffs; (7th) That the defendants refused to accept the title as offered and presented by the plaintiff; (8th) That from the preponderance of the evidence, the defendants have not suffered any damages on account of any alleged breach of contract, in this case; (9th) That from the facts and under this contract, the defendants are entitled to the return of the five hundred dollars so paid as aforesaid, on account of said purchase price under said contract; and (10th) That the plaintiff is entitled to have the cloud upon his title removed and upon the repayment to the defendant of said sum of five hundred dollars in question to the defendants, it will be so ordered."

A decree based upon the findings was rendered, to reverse which this writ of error is prosecuted.

It is contended by counsel for plaintiffs in error that the contract relied on was not a mere option to purchase, but was a binding contract to sell and convey real estate, and, as such, the vendee was entitled to have it specifically performed; that, in the event it should be held that the contract could not be specifically performed, the court might entertain the cause for the assessment of such damages as the vendee might show himself entitled to recover, the measure of such damages being, the excess of the value of the land at the time conveyance was due over the price the vendee agreed to pay.

Conceding the above contentions, a reversal of the judgment does not follow.

The contract stipulated that in the event the title was not approved by the attorneys for the Investment Company, then the amount paid by the Investment Company should be returned and the contract be null and void.

The court found, in effect, that counsel for plaintiffs in error refused to approve the title, and that plaintiffs in error refused to accept the title offered. These findings were justified by the testimony of the president of the Investment Company, one of the plaintiffs in error, and correspondence introduced in connection therewith.

It is not contended that the evidence does not sustain these findings.

The law applicable to this state of facts is thus stated in *Johnson v. Fuller,* 55 Minn. 269, which was an appeal from an order overruling defendant's demurrer to plaintiff's complaint, and ordering judgment for plaintiff:

"Action to clear a cloud on title to real estate cast by a recorded contract to convey. The price was $600; $30 paid at the execution of the contract, the remainder to be paid on the delivery of the deed. There were these clauses in the contract: 'A reasonable time, not exceeding thirty days, is to be allowed for examination of title; and the form of conveyance is to be warranty deed. In case the title shall be ascertained to be unmarketable to such an extent as to warrant the purchaser in refusing the same, and he shall so refuse the same upon that ground, the vendor shall not be liable to any damage, and the said sum of $30 paid by the purchaser shall be returned to him.'

"The defendant, the vendee, deeming the title to be unmarketable, refused to accept a conveyance, and also refused to receive back the $30; and he now claims that the contract still remains in force, so

that he can compel a conveyance. There could be no damages recovered, for the contract expressly excludes that; and a conveyance is just what he refused to take. His claim is, in effect, that he could refuse to accept a conveyance, and at any time afterwards compel the vendor to make one. The contract certainly did not contemplate any such thing. What it clearly intended was that if, at the end of the thirty days, the title should be unmarketable, the vendee might do either of two things: First, perform the contract and take a conveyance, relying on the covenants in it as security against any defects in the title; or, second, refuse to perform and receive back the money paid on it—in effect, to rescind the contract. His choice to do one or the other of these would fix the rights of the parties from that time on. Having refused to perform, the vendee's only right was to receive back the $30. Order affirmed.''

In the case at bar, the cloud sought to be removed from appellee's title was that cast by recording the contract hereinbefore set forth and other papers in connection herewith, so that the facts of the case quoted are practically identical with the facts in the case under consideration.

Other authorities to the same effect as that above quoted are: *Milmoe v. Murphy,* 65 N. J. Eq. 767; 56 Atl. 292; *Goldthwait v. Lynch,* 9 Utah 186; *Haffey v. Lynch,* 23 N. Y. Sup. 59 (68 Hun. 507).

The court, on conflicting evidence, found against plaintiffs in error on their counter-claim, which disposes of that matter.

Judgment affirmed.                    *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE HELM concurring.